ŗ

CAULKINS *v.* GAS-LIGHT COMPANY.

(*Jackson.* April 26, 1887.)

1. CORPORATIONS. *Relation and liabilitiess to stockholders. Transfers of stock.*

A corporation whose stock is transferable only on its books becomes custodian of the shares and trustee for the share-holders, and must exercise due and proper diligence to protect all parties interested in its stock from unauthorized transfers; and, therefore, if such corpotion, with notice of the rights of a *cestui que trust* in its stock, aids the trustee holding same to convert it to his own use by change and re-issuance of stock certificates and transfer on its books, it is guilty of a breach of trust, and liable for such damages as are inflicted thereby.

Cases cited and approved: Covington *v.* Anderson, 16 Lea, 314; 52 Penn. St., 232; 100 Mass., 382; 125 Mass., 150; 15 Wall., 165.

2. SAME. *Same. Liability of agent participating in breach of trust.*

An agent who knowingly aids a trustee in making or procuring the conversion or unauthorized transfer of shares of stock in a corporation, held in trust for another, is liable for the loss sustained by the *cestui que trust,* although he acted in the matters of the agency " without benefit or profit to himself."

3. SAME. *Notice of trust created by will presumed, when.*

Where a corporation has issued stock certificates showing on their face that they are to be taken by the holder as devisee under and subject to the provisions of a certain will, it is chargeable with notice of the *contents* of that will, and of the trusts imposed thereby, in all its subsequent dealings with such shares of stock.

(See Baxter *v.* Bank, *ante,* p. 33.)

4. SAME. *Conversion of stock. Measure of damages.*

For the conversion of shares of stock in a corporation, during the existence of a life estate or interest therein, the person claiming the stock in remainder is entitled to recover its value at the termination of the life estate, and not its value at the date of conversion.

Caulkins *v.* Gas-light Company.

5. SAME.  *Innocent purchaser of stock.*

A purchaser of shares of stock of a corporation affected with a trust in the hands of the holder, cannot be held liable to the beneficiary for damages or return of the stock if his purchase was made in good faith, for value, and perfected without notice, actual or constructive, of the trust.

Cases cited and approved: Cherry *v.* Frost, 7 Lea, 1 ; Cornick *v.* Richards, 3 Lea, 1.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. W. W. McDOWELL, Ch.

FINLAY & PETERS, and HUMES & POSTONS, for Caulkins.

CRAFT & COOPER, and HARRIS & TURLEY, for Gas-light Company.

FOLKES, J.  This suit, as it is now presented, involves the question as to the right of complainants to recover from the defendants, Gas-light Company and others, the value of seven thousand dollars of stock in said company, which it is claimed the company has negligently and wrongfully aided in the transfer of.

The facts necessary to a proper understanding of the case are as follows:

Mrs. Margaret A. Riggs, who was then a resident of Pennsylvania, died in 1866, leaving a will, which was duly probated. After certain specific bequests, there follows the seventh clause, in which

she provides that "all the rest, residue, and remainder of my estate, real and personal, of every nature and description, which I now own or in which I may have any interest at the time of my death, in law or in equity, I give, devise, and bequeath to Albert C. Wurzbach, of Memphis, Tennessee, and Robert Gardener, of Charlestown, Massachusetts, *in trust*, nevertheless, for the uses and purposes declared in this will."

By item eleventh she directs her executors, who are said Albert C. Wurzbach and Robert Gardener, "to pay, subject to the foregoing bequests and annuities, *two-thirds* of the net income of my estate to my daughter, Julia A. Wurzbach [now the complainant, Julia A. Caulkins], in equal quarterly payments, during the term of *her natural life*, for her own separate use, and free from the control of her husband; and the remaining *one-third* thereof to the said Albert C. Wurzbach during the term of his natural life."

By clauses twelve, thirteen, fourteen, and fifteen it is provided that if Wurzbach should survive the daughter and her issue he should have the entire estate; but should Julia A. or her issue survive him, then he should only be entitled to receive one-third of the *net income* of the estate *during his natural life*, and the estate itself to go to Julia A. and her issue *at his death*, the said Julia A. receiving the net income of the entire estate during her natural life, the whole estate to go to her issue at her death.

A. C. Wurzbach alone qualified under this will, and letters testamentary were issued to him in December, 1868, by the Orphans' Court of Erie County, Pennsylvania. He never qualified, either as executor or trustee, in the State of Tennessee.

On February 26th, 1872, the will of Mrs. Riggs was probated in Shelby County, Tennessee, and E. M. Hearn was appointed by the Probate Court of said county administrator with the will annexed of the estate in Tennessee. He was also appointed by the same court, August 6th, 1872, trustee to carry out said will.

At the time of her death Mrs. Riggs owned 160 shares of the capital stock, of $100 each, aggregating $16,000, in the Memphis Gas-light Company, a corporation chartered by the State of Tennessee, and having its *situs* in Memphis, Tennessee.

The gas company paid dividends to Wurzbach until Hearn qualified as administrator, when Wurzbach demanded that the company should continue to pay him dividends, and issue new stock to him in lieu of that which he then held, standing on the books in the name of Mrs. Margaret A. Riggs. Hearn, having collected dividends on the stock for awhile, demanded that it should be transferred to him as administrator, etc. The company refused to issue stock to either of them *after an examination of the will.*

On March 13th, 1872, Julia A. Caulkins and husband filed a bill in the Chancery Court of Shelby County against Wurzbach, Hearn, and the

gas-light company, alleging Wurzbach's waste of
the estate, his incompetency, dissipated habits, his
attempts and efforts to get possession of the said
stock and to convert it to his own use, and pray-
ing for the appointment *of a trustee* in Tennessee
to take charge of the stock, and for an injunction
prohibiting the gas-light company from issuing said
stock to Wurzbach, etc., which said injunction was
duly granted, and served on said company.

At the time of filing this bill litigation was
pending between Mrs. Caulkins and Wurzbach in
the Orphans' Court of Erie County, Pa., which was
soon afterward settled by an agreement and decree
therein, by which Wurzbach was to resign his
trusteeship of Julia A. Caulkins under the will of
Mrs. Riggs, "and agrees to transfer to David Olin,
of Girard, or whomsoever the Orphan's Court of
Erie County may appoint her trustee, $9,000 of
the stock of the Memphis Gas Company; also to
transfer and deliver to said trustee $10,000 of the
bonds of the United States, and certain real estate
in Omaha, Nebraska, valued at $15,000; the said
Wurzbach to retain the house and lot in Girard
aforesaid, valued at $10,000, and retain $7,000 of
the capital stock of the gas company aforesaid."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"He, the said Wurzbach, *is to retain the trustee-
ship* of the property retained by him, and *reserves*
all of his rights *as devisee* and *legatee* of said will of
said Margaret Riggs. The said Julia A. Caulkins
relieves the said Wurzbach from all claims as her

said trustee, or as executor, or guardian up to this date.

"The said Wurzbach is to have no further or other claim *on the income* of the said estate than the house and lot in Girard and the $7,000 of Memphis gas stock during the life of said Julia A. Caulkins.

"And on the same day a decree was entered on said agreement in said Orphans' Court, reciting that the parties having agreed upon terms of settlement and partition of the *income* of the estate, which the Court, after due consideration, decree to be just and equitable, and not repugnant to the will of the testatrix nor the law, and having filed his resignation of his trust as testamentary trustee of the income and estate of the said Julia A. Caulkins, the Court accepts his said resignation, and appoints David Olin, of Girard, in said county, trustee of *that portion* of said estate and income belonging, by the 'terms of said settlement, to Julia A. Caulkins, and the said A. C. Wurzbach to *remain trustee* of that portion of the estate given to him by the terms of said agreement. And that the said agreement, filed as aforesaid, shall constitute a part of this decree, and that the same and every portion thereof shall be specifically performed and carried out according' to its true intent and meaning."

We have been thus elaborate in the quotations from the agreement and decree for the reason that the same, together with other parts of the record

from the Orphans' Court of Erie County, were brought to the knowledge of the defendant company by being filed on the 6th day of December, 1872, in the Chancery Court of Shelby County, in the said cause therein pending of *Caulkins* v. *Wurzbach*, and made the basis of the decree which is now set up by the gas company as a conclusive answer to the question of its liability to the complainants in this suit.

This decree of said Chancery Court of Shelby County is as follows:

"It appearing that all matters in dispute between the complainants, Caulkins and wife, and Defendant Wurzbach have been settled by agreement of the parties, and that under said agreement Defendant Wurzbach has resigned as trustee of Complainant Julia A. Caulkins, and David Olin, of Erie County, Pa., has been appointed by the Orphans' Court of said county, Pennsylvania, trustee for said Julia in his place and stead. It further appears by their agreement, confirmed by the decree of said Pennsylvania Court, all the assets of the estate of Margaret A. Riggs, deceased, in the hands of said Wurzbach (who is her executor, duly appointed and qualified under the laws of Pennsylvania, where she resided at the time of her death) have been divided, or agreed to be divided, between said Julia A. Caulkins and said A. C. Wurzbach *according* to the directions of *the will* of said Margaret A. Riggs; that among other assets there came to the hands

44

of said Wurzbach in the State of Pennsylvania, certificates for $16,000 of stock in the Memphis Gas-light Company, which, by the agreement and settlement between the parties aforesaid, is to be divided, and $9,000 of it held by said Olin as trustee for said Julia A. Caulkins, and the remaining $7,000 to be held by said Wurzbach in his own right and for his own benefit; *but* the shares of BOTH to be held *according* and *subject* to *the provisions of the will* of said Margaret A. Riggs, deceased. * * * On motion, therefore, the attachment herein is discharged, and the injunction dissolved, and decree modified, so as to permit said Wurzbach, as Pennsylvania executor, to surrender to the Memphis Gas-light Company said certificates of stock, and take out new certificates of stock, so as to divide the same *according to said agreement of division* made by the parties. And said gas-light company is hereby directed and required, upon the surrender of the old certificates, to issue new ones—$7,000 to said Wurzbach in his own right, and $9,000 *in form, so that he can deliver or transfer* the same to said Olin as trustee for Complainant Julia A. Caulkins.

"It is further ordered that Defendant E. M. Hearn pay the dividends collected by him, after paying costs, according to the agreement of the parties—two-thirds to said Olin, trustee for Complainant Julia A. Caulkins, and one-third to said Wurzbach or his order. A copy of this order will be immediately served on the Memphis Gas-

light Company, and charged in the costs of the cause, and all other matters are reserved."

A copy of this decree was served upon the gas company, which copy was preserved, and is shown to be still in the possession of the company, attached to the stock-books, together with the following communication:

"MEMPHIS, TENN., 10th December, 1872.

"MEMPHIS GAS-LIGHT COMPANY: Issue new certificates for these as follows: $7,000 in name of Albert C. Wurzbach as devisee under the will of Margaret A. Riggs, deceased, and $9,000 in the name of David Olin, trustee for Julia A. Caulkins, devisee under the will of Margaret A. Riggs, deceased. Deliver to me only.

"CHARLES KORTRECHT,
"*Attorney for Parties.*"

Thereupon, the original certificates held in the name of Mrs. Riggs being surrendered, the company issued $9,000 of new stock to said Olin, trustee, and $7,000 certificate to "Albert C. Wurzbach, devisee under the will of Margaret A. Riggs, deceased."

This new certificate of stock for $7,000 so issued to Wurzbach, "devisee under the will of Margaret A. Riggs, deceased," recites on its face that it is "transferable only on the books of this company." This certificate bears date and was issued on the

24th December, 1872. And on the 28th day of January, 1873, a final decree is entered in said cause of *Caulkins* v. *Wurzbach, Hearn, and The Gas Company*, pending in the Chancery Court of Shelby County, wherein, after reciting that it has been made to appear to the Court that the $16,-000 of gas stock attached and described in said cause has been divided up according to the agreement of the parties and the order of this Court, and reciting that Hearn, as administrator and trustee, has fully paid out the $2,560 of dividends on said stock collected by him pending his administration and trusteeship according to the agreement of the parties and the decree therein—to-wit, two-thirds to David Olin, trustee for Complainant Julia A. Caulkins, and one-third to Defendant Wurzbach —and after reciting that there are no further duties to be performed by said Hearn, trustee, in consequence of which he and his sureties are discharged, said decree concludes as follows:

"And it appearing that the object of this suit has been accomplished, and nothing further remains to be done herein, this suit is hereby dismissed and ended, according to the agreement and compromise made by the parties in interest and filed herein, all of which is finally ordered and decreed."

So far there has nothing been done upon which any liability of the company can be predicated. It has, up to this time, recognized its duty and faithfully discharged it. We find that the company refused to cancel the old certificates in the name

of Mrs. Riggs, remained neutral in the struggle over the stock, and only acted when and as directed by the Court. As indicative of a further purpose to continue the performance of its duty to its stockholders, it made and preserved, as we have seen, a careful record of the manner in which the original $16,000 of stock had been surrendered, and of the division and re-issue of the same, not only showing on the face of the new certificates that $9,000 was issued to Olin, trustee for Mrs. Caulkins, and $7,000 to "Albert C. Wurzbach, devisee under the will of Margaret A. Riggs, deceased," but showing the *exact language* on the stub of the stock-book, and number of the certificate that we find on the face of the certificate— "devisee under the will of Margaret A. Riggs, deceased." And, in addition to this, they attach to the stock-book the canceled stock and the copy of the decree of the Court and the original of the letter of instruction from Chas. Kortrecht.

Let us resume the history of the $7,000 certificate.

It seems to have remained in the possession of Wurzbach, in Pennsylvania. He, in the meantime, collected the semi-annual dividends thereon until November, 1876, when he signed his name as follows: "A. C. Wurzbach," without more, to the blank power of attorney for the transfer of the stock printed upon the back of the certificate, and sent the same to his friend, James S. Wilkins, at Memphis, with request to sell same and remit proceeds to him in Pennsylvania.

Wilkins called at the principal office of the company, and asked if it was all right and if he could sell and transfer the same, and says he was told by the Secretary that it was all right. Whereupon, he placed same in the hands of B. Richmond, a broker at Memphis, with instructions to sell.

Richmond found a purchaser in the person of the Defendant Rossi for $3,000 of the stock, and thereupon the Secretary of the company filled up, in his own handwriting, the blank power of attorney on the back of the $7,000 certificate so as to make it read: "For value received, I hereby authorize Jas. S. Wilkins to transfer to J. B. A. Rossi thirty shares and to James S. Wilkins forty shares of the capital stock of the Memphis Gaslight Company, on the books of said company.

"Witness my hand this 21st day of November, 1876. (Signed) A. C. WURZBACH."

"Attest: JAMES S. WILKINS."

Whereupon the company issued a new certificate for $3,000 in the name of J. B. A. Rossi, and delivered same to the broker, Richmond, who carried same to the purchaser, Rossi. Rossi never saw the Wurzbach certificate, never knew whose stock he was purchasing, but merely contracted to purchase of Richmond $3,000 of stock, and paid for it when the latter delivered to him an original certificate for the amount named, issued directly by the company to him.

It is abundantly established that Rossi's purchase

was in good faith, for value, without any notice. Clearly, therefore, there can be no recovery against Rossi. *Cherry* v. *Frost*, 7 Lea, 1; *Cornick* v. *Richards*, 3 Lea, 1.

If Rossi were, in any view of the case, liable to these complainants, the gas company would unquestionably be responsible to him. *Bank* v. *Lanier*, 11 Wall., 369; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; *Telegraph Company* v. *Davenport*, 97 U. S., 369.

As to the remaining $4,000 of the stock involved herein, the gas company issued a new certificate to James S. Wilkins in his own name for that amount. The proof shows that this was done to facilitate the sale and transfer of the stock by Wilkins, who subsequently sold and transferred same to other parties, who are not sued.

Wilson acted throughout as the friend and agent of Wurzbach in his sale of the stock, with no benefit or profit to himself. The question of his liability will not be considered separately from that of the company.

That a corporation is charged with many of the duties of a trustee toward its stockholders; that it is bound to exercise proper care and diligence in protecting the title of a *cestui que trust*, or equitable or beneficial owner; and that it is responsible for any injury sustained by its negligence or misconduct, are propositions so well established as not to require any discussion.

We content ourselves, therefore, with a mere ref-

erence to some of the many cases familiar to the
profession: Perry on Trusts, § 242; *Lowery* v. *Com.
Bank,* Tancy (Cir. Ct.), 310; *Bayard* v. *Farmers'
Bank,* 52 Penn. St., 232; *Stewart* v. *Fireman's Ins.
Co.,* 53 Md.; *Loving* v. *Salisbury Mills,* 125 Mass.,
150; *Shaw* v. *Spence,* 100 Mass., 382; *Duncan* v.
*Jandar,* 15 Wall., 165; Morawetz on Corporations,
§ 181; Fields on Corporations, § 116; and the late
case from this court of *Covington* v. *Anderson,* 16
Lea, 314.

Knowledge of the *contents* of a will on the part
of a corporation is presumed by law from its
knowledge of the fact that there is a will, upon
the terms of which the title to its stock is made
to depend. And especially is this so where the
company has taken up and canceled stock standing
on its books in the name of the testator, and is-
sued in lieu thereof other stock, in terms referring
on its face to such will.

A corporation whose stock is, as in this case,
transferable only on the books of the company, is
made the custodian of the shares, and is clothed
with power to protect the rights of its share-hold-
ers from unauthorized transfers. With this *power*
there exists the *duty* that rests upon all trustees:
to protect, so far as the exercise of proper dili-
gence and care can do so, the interests of the
*cestui que trusts;* and it must respond in damages
for any injury sustained in consequence of its neg-
ligence or misconduct.

Indeed, the general propositions, as stated, are

not controverted by the learned counsel for the defendant company.

The defense made for the company is that "the change of the original certificate and the issue of the new one for $7,000 was authorized by the Chancery Court, and that Wurzbach was then clothed with the entire title 'in his own right;' and that if any wrong has been done, it was in 1872, when the original certificates were canceled, and not in 1876, when the re-issue of the stock was made to Rossi and to Wilkins;" that the company acted solely in obedience to this decree, and that the words "devisee under the will of Margaret A. Riggs, deceased," was only a deraignment of title, and in no way differed in legal effect from a transfer to him, or a certificate in his name simply—*i. e.*, "in his own right"—in either case.

With this contention we are unable to agree. In our view the wrong resulting in the injury complained of was not done in 1872. The decree of the Chancery Court did not have the effect to abrogate the terms of the will, and was not so intended nor understood by the parties; the gas company, itself a party, did not so understand it, as is shown by the manner in which it issued the stock at that time.

Ignorance of law or fact cannot, under the proof in this case, be invoked on behalf of the company. As a party in the Chancery Court, it had before it the agreement made in Pennsylvania and the decree therein in the Orphans' Court in that

State, which informed it that the controversy then
pending between Julia A. Caulkins and A. C.
Wurzbach was compromised only to the extent of
Wurzbach resigning the office of testamentary trus-
tee as to *two-thirds* of the property then held by
him under the will of Mrs. Riggs, and he *"retain-
ing the trusteeship"* as to the other *one-third.*

While he had been trustee for the whole, two-
thirds of the *income* only was to go to Mrs. Caul-
kins and one-third to him.    In order to make ef-
fectual his surrender of the office of trustee *as to
Mrs. Caulkins,* he turned over to David Olin, the
*new trustee,* two-thirds of the *corpus* of the prop-
erty, to-wit: $9,000 of the gas stock, $10,000 of
U. S. Government bonds, and $15,000 of lands in
Nebraska, making $34,000, he retaining one-third,
to-wit: $7,000 of the gas stock and the house in
Girard, Pa., at $10,000, making $17,000.   The entire
property was, by express terms, to remain under the
dominion of the will, both as to *corpus* and *in-
come*;   the only change was that Olin was trustee
for Mrs. Caulkins' share and Wurzbach was, in
the language of the agreement, "to retain *the trus-
teeship* of the property retained by him," and, in
the language of the decree, "to remain trustee of
that portion of the estate;"  and again, with this
agreement and decree filed in our Chancery Court,
with our Court assuming merely to enter a decree
in conformity therewith, referring to the division of
this gas stock, concludes with this language: "BUT
the shares *of both* to be held according and *sub-*

*ject to* the provisions of *the will* of said Margaret A. Riggs, deceased."

How can it be possible, and upon what rules of construction can it be said, that the use of the words "in his own right" are to override the provisions of the will, overturn the express stipulations of the agreement and decree, and render nugatory the *proviso* immediately following the supposed magical words.

The office of a proviso is to restrict and qualify what has gone before. As if anticipating that the words "in his own right" might be misleading, or apparently contradictory of the preceding terms of the agreement, the decree carefully follows the use of such words with the *proviso*, "*But* the shares of *both* [*i. e.*, of both trustees] to be held according and subject to the provisions of *the will*," etc.

Surely it is asking too much when called on to give the construction of this decree as contended. As already said, the company itself, when it came to obey the direction in the decree to issue this $7,000 of stock to Wurzbach in his own right, did not *then* construe these words as now contended for. They did not issue it to him "in his own right," but they used the words "devisee under the will," etc., thus very properly putting an earmark upon the stock that was well calculated to have defeated its negotiability and preserve it for the beneficiaries under the will after the falling in of the life estate of Wurzbach.

It is worthy of note that this stock—that is,

*this certificate*—thus car-marked was never sold and transferred to a purchaser. Before it could be sold or transferred the old certificate was taken up and canceled by the company, thus actively assisting in the breach of trust which it was manifest that Wurzbach was attempting.

It is remarkable that the company, with its knowledge of the will and of all the proceedings thereunder, should have canceled this stock and issued new certificates in its stead for the avowed purpose, as stated by Wilkins, of enabling him to sell the stock for Wurzbach—the company not only removing any doubts which the form of the certificate had created in the mind of Wilkins as to the right of Wurzbach to sell, but the Secretary himself filling up the blank power of attorney that was signed by Wurzbach; and it would seem that the Secretary also filled up the date of the power of attorney, as it is dated November the 21st, 1876, the very day that the books of the company show the issuance of the substituted stock to Rossi and Wilkins.

The fact that the Secretary says he consulted the legal adviser of the company, if the fact be that way, can furnish no protection to the company where, with knowledge of the trust, it enabled and aided the trustee to fraudulently dispose of the stock. There is no evidence as to what facts were communicated or what records were exhibited to the attorney, upon which he based his opinion and advice. The company's knowledge was

independent of the attorney's, and, with or without his advice, it acted at its peril. *Covington* v. *Anderson*, 16 Lea, 314.

There has been no conduct of the complainants that would bring the case within the principle of acquiescence or encouragement such as would estop them from holding the defendants liable under the cases of *O'Brien* v. *Wild*, 92 U. S., 81–85, and *Swain* v. *Leumans*, 9 Wall., 254–274, cited by counsel.

The complainants have had no connection whatever with the cancellation of the $7,000 certificate, nor with the issuance of the stock to Rossi and Wilkins; and, as we have already seen, there is nothing in the suit resulting in the decree of compromise done or suffered by the complainants that can excuse the defendant from the liability which the well-settled principles of law impose upon it. When the large amount of corporate securities held in trust throughout the country for a class of beneficiaries who are generally dependent entirely upon the fidelity and diligence of the corporation issuing same are considered, courts of equity will not be eager to condone negligence nor to put a premium upon infidelity. This Court certainly has no inclination to depart from the well-defined principles applicable to such cases and upheld by the undeviating current of authority.

The result is that the decree will be reversed, the exceptions to the report of the Referees sustained, and decree here for complainants declaring

them entitled to the value of the stock, not at the time of the conversion but at the date of the death of the life tenant, A. C. Wurzbach, with interest from that date.

The cause will be remanded for the purpose of taking the account herein ordered and further proceedings in accord with this opinion.

Upon an ascertainment of the amount, the money will be paid into Court, and a trustee will be appointed, with good and sufficient bond and security, to be approved by the Chancellor, conditioned to administer the same according to the terms of the will of Margaret A. Riggs, deceased, under the direction and control of the Court, passing his accounts annually.

Wurzbach having died pending the suit, an order will be entered abating same as to him.

Wilkins is equally liable to complainants for his participation in the wrongful sale of the stock, but, as between him and the company, the latter is adjudged primarily bound.

The costs will be paid by the gas company.