### Smith *v.* Railroad.

#### *(Nashville.* February 23, 1892.)

1. CORPORATION BONDS. *Innocent purchase from trustee.*

The purchase of negotiable corporation bonds from the ostensible owner, though he be in fact only a trustee and his sale in breach of trust, confers pefect title upon the buyer even against the *cestui que trust,* if the purchase was in good faith, for full value, and without knowledge or notice, actual or constructive, of the existence of the trust. (*Post, pp. 224–228.*)

2. SAME. *Same. Innocent agents protected.*

And persons innocently aiding in such purchase incur no liability to the *cestui que trust.* (*Post, pp. 224–228.*)

3. CORPORATIONS. *Re-issue of stock certificates to assignee. Negligence.*

Stock certificate assigned to "heirs and distributees" of original stockholder by his "administrator" was presented by a distributee, to whom a new certificate was issued individually and for his own benefit. The corporation was ignorant that the original stockholder had died testate, limiting by his will the interest of this distributee, who was also a legatee, to a life estate in personalty, and creating a trust in remainder.

*Held:* Corporation not guilty of negligence in making this re-issue. It was not put upon inquiry as to will and its trusts. (*Post, pp. 229, 230.*)

Cases cited and distinguished: Covington *v.* Anderson, 16 Lea, 310; Caulkins *v.* Gas Company, 85 Tenn., 683.

4. SAME. *Same. Same.*

Bequest of "one-fifth in value" of testator's personal estate to a legatee for his own life, and to be preserved in remainder and held in trust for another. The administrator *cum testamento annexo* delivered stock certificates to this legatee in payment of this legacy, assigning them absolutely to the "heirs and distributees" of the testator, and the

Smith *v.* Railroad.

corporation, without notice of the will, issued new certificate in like terms to this assignee and legatee.

*Held:* The administrator *cum testamento annexo* was not guilty of breach of trust in making absolute assignment of the stock certificates in payment of such legacy, and, *a fortiori*, the corporation was not guilty of negligence in issuing new certificates according to terms of assignment. (*Post, pp. 224, 229, 230.*)

5. **Same.** *Same. Same.*

But, assuming negligence of the corporation in such case, by reason of its failure to ear-mark the new stock certificates with the trusts imposed by the will, still that negligence is not proximate cause of loss where the stock certificates did, nevertheless, go into the hands of the proper trustee and were subsequently lost by reason of his independent acts of negligence. (*Post, p. 231.*)

6. **Same.** *Same. Same.*

Upon transfer of the original stock certificate by the person to whom it was issued, and in whose name it stood upon the company's books, the corporation issued a new certificate to the assignee. The original stockholder held the certificate as a trustee, and made the assignment in breach of his trust, and misapplied the proceeds realized from the sale of this stock. The corporation had no knowledge of the trust.

*Held:* Corporation not liable to *cestui que trust* for their loss. It was guilty of no negligence. (*Post, pp. 232–234.*)

Cases cited: 97 U. S., 369; 127 U. S., 614; 96 U. S., 193; 7 N. Y., 274; 125 Mass., 138; 42 Md., 384; 44 Md., 551.

7. **Same.** *Same. Same.*

Although the corporation had full knowledge of the breach of trust on the part of the original stockholder in making the transfer of the certificate, still the corporation cannot incur any liability to the *cestui que trust* for issuing the new certificate, if the assignee was entitled to be protected as an innocent holder of the original certificate. He could compel the corporation to recognize him as a stockholder in such case. (*Post, pp. 235–239.*)

8. **Same.** *Assignment of stock confers title without registration upon company's books.*

And assignee's title to shares of stock is complete, and, being otherwise an innocent purchaser, he is entitled to protection, and to enforce his

Smith v. Railroad.

rights as such without and before registration of his transfer upon the books of the company.   (*Post, p. 238.*)

Cases cited and approved: Cherry *v.* Frost, 7 Lea, 1; Caulkins *v.* Gas Company, 85 Tenn., 684; Hadley *v.* Kendrick, 10 Lea, 525; Bank *v.* Farrington, 13 Lea, 333; Bank *v.* Planing Mill Co., 86 Tenn., 252; 11 Wall., 377.

Cited as disapproved: Cornick *v.* Richards, 3 Lea, 1.


9. SAME.   *Assignment of stock by infant voidable but not void.*

Infant's assignment of shares of stock is only voidable and not void. Therefore, the corporation is not only protected in acting upon such assignment until it is avoided by the infant, but may be compelled to recognize it.   (*Post, pp. 239, 240.*)

Cases cited and approved: Wheaton *v.* East, 5 Yer., 61; McGan *v.* Marshall, 7 Hum., 125; Barker *v.* Wilson, 4 Heis., 269.


---

### FROM DAVIDSON.

---


Appeal from the Chancery Court of Davidson County.   ANDREW ALLISON, Ch.


N. N. COX, JONES & HOUSTON, A. D. MARKS, and PITTS & MEEKS for Smith.


G. N. & A. M. TILLMAN, DEMOSS & MALONE, and COOK & MARSHALL for Railroad.


LURTON, J.   Under the will of Jos. W. Baugh, certain real estate and the "one-fifth part in value" of his personal estate, was bequeathed to

the complainant, his daughter, then Fannie F. Baugh, subject to the following limitations:

"To have and to hold the same, together with the increase, rents, and profits thereof, to her sole and separate use and benefit, and free from the debts, contracts, liabilities, and control of any husband whom she may marry, and for and during the term of her natural life; and at her death the said property, real and personal, together with the increase, rents, and profits thereof not consumed in her support and maintenance, and the support and maintenance and education of her children, to be equally divided between the children of the said Fanny, the child or children of any deceased child to take the share its parent would have taken if living. But should the said Fanny depart this life leaving no child or children, or the issue of such, then, in that event, the property herein bequeathed to her, and its increase, etc., shall be equally divided between her brothers and sisters surviving her, and the issue of such as may be dead leaving issue. And should it become necessary, in giving full force to this item of my will, I desire that suitable trustees be appointed, it being distinctly my will and desire to give to my said daughter a life estate merely, with remainder over as hereinbefore mentioned."

Testator owned, at his death in 1872, fifty-seven bonds of five hundred dollars each, issued by the defendant railway company. He also owned one thousand two hundred and fifty shares of the com-

mon stock of the same corporation, for which he held stock certificates, registered on the books of the company in his own name.

No executor being named in the will, Mr. S. S. House was appointed and qualified as administrator with the will annexed. These bonds and stock certificates came to the hands of Mr. House as assets to be administered. There being no occasion to use them in payment of debts, and no specific bequest having been made of either bonds or stock, the administrator distributed them among the legatees—the shares of stock by an assignment of the certificates to the "heirs and distributees of J. W. Baugh, deceased." No particular number of shares were directed to be assigned to the several distributees, nor were the persons designated who were "heirs and distributees;" but Mr. J. W. Baugh, a son and distributee, was, in the usual form, constituted his attorney in fact to make and execute all necessary acts of assignment and transfer to carry out the purpose. Under this power and assignment, the company transferred two hundred and fifty-one shares to Fanny F. Baugh, the complainant, who was then a minor and unmarried. This certificate was, in form, an assignment and transfer out and out of the whole title to these shares, it nowhere being recited in the certificate that her interest was but a life estate.

Shortly after this transfer, Mrs. C. H. Baugh, widow of the testator and mother of Fanny, was

15—7 P

appointed by the County Court trustee for her daughters Fanny and Cicily, to the latter of whom a similar bequest had been made, subject to same limitations. She qualified by giving bond in the sum of seventy thousand dollars, and received into her possession the bonds and stock certificates which had been assigned to her *cestui que trust* by the administrator.

In May, 1877, complainant, Fanny, was married to the defendant, B. B. Smith, and in December, 1877, Mrs. Baugh's resignation as trustee for Mrs. Smith was accepted, and Mr. Smith appointed in her room and place, he entering into bond in the sum of fifteen thousand dollars, with three sureties. Thereupon the bonds and stock held for Mrs. Smith were turned over to her husband as her trustee.

In February, 1879, B. B. Smith and wife jointly assigned the certificate standing in her name, by filling out the blank assignment to G. M. Rizon, and constituted him their attorney in fact to assign same on transfer books of the corporation.

May 17, 1879, this assignment to Rizon was duly acknowledged before a Clerk of a County Court, Mrs. Smith being privily examined.

On the same day this certificate was sold and assigned to Clark, Dodge & Co., Rizon executing an assignment on the original certificate. This sale was made by, and the money paid to, Mr. Smith.

Afterward Clark, Dodge & Co. assigned the

same certificate to Victor Newcomb, and on December 15, 1879, it was sent to the secretary of the defendant corporation, and the shares transferred from the name of Fanny Baugh to that of the purchaser, a new certificate being issued.

The railroad bonds held by Smith were, about the time of the sale of the stock, sold to the defendant, Samuel Seay. The bonds and shares were sold for their full market value at the time. The proceeds were by the trustee misapplied, and, as charged by the bill and admitted in his deposition, "squandered in drinking, gambling, and other dissipations."

As to the bonds, the bill charges that the purchaser knew that the seller, Mr. Smith, held them as a trustee, and was therefore bound to inquire as to his power to make sale; that, in fact, they were bought for the company issuing them, or for Mr. G. W. Seay, its secretary and treasurer, who, it is charged, knew, or ought to have known, of the trust under which they were held.

A decree is sought against all the persons suggested as interested in the purchase or aiding in making the sale. The Chancellor dismissed the bill so far as any relief was sought on account of the sale of these bonds. In this part of his decree we most fully concur. The evidence that they were purchased by Mr. Samuel Seay in good faith, and in absolute ignorance that Mr. Smith held them in trust, is entirely satisfactory. We are also satisfied that neither G. W. Seay nor the

railroad company were in any way concerned in their purchase or sale. It is simply a case of negotiable securities, in no way ear-marked, sold on open market by a trustee entitled to their possession to innocent purchasers for full value, who neither had knowledge of the fact that the seller was a trustee or of any purposed breach of a trust.

Are complainants entitled to any relief against any of the defendants on account of either the sale or transfer of the stock certificate? The assignment to Rizon seems to have been a sham, and intended to aid in the proposed sale of the shares. Rizon was Smith's brother-in-law. He was present at the sale to one McCrory, and himself executed an assignment to Clark, Dodge & Co., for whom, it would seem, McCrory was acting. Rizon at once received a part of the proceeds. He is not sued; neither are the sureties on Smith's bond as trustee. The bill undertakes to excuse this by alleging the sureties to be insolvent. They are the father and brothers of the defaulting trustee, and this is more probably the reason for omitting them. Clark, Dodge & Co. are not sued. Victor Newcomb, in whose name the shares now appear to stand, was named as a non-resident defendant in the caption of the bill. No publication seems to have been made, and no attachment was sought against the shares which, from this record, seem to still stand in his name. Mr. Newcomb did not answer, and, not being

before the Court, his attitude as a purchaser becomes unimportant, except so far as it shall affect the liability of the corporation for transferring this stock to him. The Chancellor was of opinion that the railway company was guilty of negligence in making or allowing this transfer, and decreed accordingly.· From this part of the decree it has appealed.

Complainants have sought to support this decree upon several independent grounds.

*First.*—That · the act of the corporation was negligent in issuing a certificate, in 1873, to Fanny Baugh without showing on its face the trusts and limitations under which she held the title, and that this neglect led to the subsequent loss of the stock to an innocent purchaser without notice.

We are of opinion that, upon the facts of this case, the corporation is not now liable to an action on this ground. It had no knowledge that there was a will limiting the title of Fanny Baugh to this stock, and there were no circumstances connected with the transfer by Mr. House, as administrator, calculated to put it upon inquiry as to the existence or terms of a will. He assigned the certificate standing in the name of his decedent simply as administrator. If he had assigned as administrator *cum testamento annexo*, it would have been notice of a will; but such a signature would have been singular, though technically exact. The assignment was to the "*heirs* and *distributees*," not *legatees*, of J. W. Baugh. There was, there-

fore, nothing about the transfer calculated to indicate a will. In this respect the case is to be distinguished from *Covington* v. *Anderson*, 16 Lea, 310, and *Caulkins* v. *Gas Company*, 85 Tenn., 683. The fact that stock is assigned by one other than the person to whom it was issued devolves upon a corporation, when called upon to transfer the shares and issue a new certificate, the duty of inquiry as to the power of the assignor to make the assignment. Here it made no inquiry. It assumed, therefore, the risk as to Mr. House's *power* to dispose of this stock. In assuming that he had the *power* it assumed no other risk, there being no circumstances calculated to excite the suspicions of a prudent man that a breach of trust was contemplated. Cook on Stock and Stockholders, Sec. 326.

The power of Mr. House under the will to dispose of this stock cannot be doubted. He had a right to sell, or distribute in kind to the legatees if not needed for payment of debts. It had not been specifically devised. "The one-fifth in value" of testator's personal estate given to his daughter, Fanny, might have been paid to her in money, bonds, or stocks, the beneficiary consenting. His assignment of these shares to her on account of her bequest was within his power. That he assigned the title absolutely was not breach of his trust. She took the title under the will and subject to the limitations of the will, and became herself charged with a trust in favor of the remainder-men.

It might be conceded that he ought to have indicated on the certificate the limitations on her title. But it was not a breach of trust if he failed to do so. The corporation, who had no knowledge of the will, were certainly not in fault in registering the transfer as he had made it. Subsequently a trustee was appointed for the purpose of holding the estate of Fanny and preserving the trusts of the will. This certificate went into the hands of this trustee. While thus held it was in no danger of passing into the hands of an innocent purchaser without the joint concurrence of the trustee and life tenant in a breach of trust. The negligence of administrator or corporation in not ear-marking this stock was obviated when it reached the hands of a trustee charged with the duty of preserving the trusts of the will. The subsequent loss was the direct consequence of subsequent and independent acts of negligence and breaches of trust. This loss was not the proximate consequence of the remote acts of negligence now complained of.

We come now to consider the ground upon which the Chancellor seems to have rested his decree, viz., that the corporation was guilty of negligence in permitting the transfer of this stock to Victor Newcomb.

The contention of complainant is that the company had constructive notice of the fact that this stock was held by Mr. Smith as trustee, and that as trustee he had no power of sale, and that

therefore it should have refused to transfer the shares to his assignee. The facts upon which the corporation is sought to be charged with notice are these:

After the appointment of Mrs. Baugh as trustee she executed receipts for a number of dividends. Some of these receipts were signed by her as guardian, others as guardian trustee, and others as trustee. After Mr. Smith's appointment he was directed by the secretary of the company to receipt as trustee.

The secretary, who paid them dividends and took their receipts, says that he supposed from Mrs. Baugh's receipts that she was guardian; that in point of fact he had no information of her being a trustee, or that Mr. Smith was her successor; that he required the latter to receipt as trustee because the stock stood in the name of a married woman, and that he used the term trustee as synonymous with agent.

The evidence of knowledge of a trust is unsatisfactory. But waiving this, and waiving the question as to the power of the trustee to sell, we shall rest our decision upon another question.

If a corporation transfer shares upon a forged assignment and power of attorney, or upon the authority of one wrongly assuming to be the agent of the owner, or upon a void decree or judgment, its act would be a nullity, in so far as it was thereby sought to affect the rights or status of the true owner as a share-holder. Such owner

would remain a share-holder regardless of the illegal cancellation of the evidence of his right, and notwithstanding the issuance of a new certificate to the transferee in place of that canceled. His right would be no more affected by the taking up of his certificate without valid authority than it would be by its accidental destruction. A Court of Equity would compel the corporation, in either case, to recognize him as a share-holder by the issuance of a new certificate, and compel an accounting for dividends wrongly paid over to the transferee. *Telegraph Company* v. *Davenport*, 97 U. S., 369; *St. Romes* v. *Cotton-press Company*, 127 U. S., 614; *Dewing* v. *Perdicases*, 96 U. S., 193; *Pollock* v. *Bank*, 7 N. Y., 274; *Doing* v. *Salisbury Mills*, 125 Mass., 138; *Brown* v. *Howard Fire Insurance Company*, 42 Md., 384; *Hambleton* v. *Central Railroad Company*, 44 Md., 551.

But where the assignment of shares is made by the person appearing on its books to be the absolute owner, but the assignment was in *breach of trust*, then the liability of the corporation to the *cestui que trust* for transferring such shares depends not only upon its being shown that the corporation had either actual or constructive notice of the breach of trust, but upon its further appearing that its act in recognizing the assignment and making the transfer operated to aid the breach of trust and contributed directly to the loss of the stock by the *cestui que trust*.

If it be assumed that the facts known to the

corporation at the time of its transfer of these shares to Newcomb were sufficient to put it upon inquiry as to the terms upon which this stock was held, and as to the power of the assignees to make sale, and the purposes of such sale, then it should be held justly liable *for the injurious consequences to the cestui que trust of its act,* under such circumstances, in making the transfer to the purchaser. But if its transfer to him did not affect the rights and interests of the *cestui que trust,* by reason of the fact that the purchaser had acquired a good and indefeasible title *before such transfer,* then it would not be just to hold that it had aided in a breach of trust already consummated, or contributed to a loss already irremediable·

The rule on this subject has been well stated by Mr. Lowell in his recent and most valuable work upon Transfer of Stocks. "The liability of the corporation," says Mr. Lowell at Section 153, "for recording of transfers made in breach of trust depends very much upon the position of the purchaser. If he has acquired, before transfer on the books, a perfect title to the stock, free from all claims on the part of the *cestui que trust,* the breach of trust is complete before the corporation is asked to transfer, and when it records the transfer the corporation is merely doing what it is bound to do, and is not helping the trustee to commit the breach of trust. The corporation can therefore incur no liability to the *cestui que trust* by recording a transfer to a *bona fide* purchaser

for value, unless there is a regulation making the stock transferable only on the books, and unless that regulation can be so construed that the act of the corporation is necessary to pass the title." To same effect see Sections 99, 100, 138, 149, 150.

The negligence of the corporation in permitting the transfer must be the efficient and proximate cause of the loss sustained by the *cestui que trust.* If the purchaser's title was complete without the transfer, then it cannot be the efficient proximate cause of the loss. Such a purchaser could compel a transfer to himself, and it would be the gravest injustice to hold the corporation responsible when its refusal would subject it to liability to the purchaser and in no way improve the case of the *cestui que trust.*

Let us apply this principle to the facts in this case. This stock stood in the name of Fanny Baugh. The certificate was issued to her. She joined her husband in assigning it to her brother-in-law, G. M. Rizon. This assignment and power of attorney to Rizon they acknowledged before the Clerk of the County Court. Mrs. Smith says she consented to a sale, and assigned the shares to enable her husband to make a sale, because he promised to invest the proceeds in other property. The transfer to Rizon, as before stated, was probably for the purpose of better enabling Smith to bring about a sale. Three months after date of this assignment, Smith and Rizon together made a sale to Clark, Dodge & Co., for cash, for full

market value. Subsequently they assigned the shares to N. Victor Newcomb. The latter, nearly ten months after date of Mrs. Smith's assignment to Rizon, sent the original certificate, with the assignments of Smith and wife to Rizon and Rizon to Clark, Dodge & Co. and Clark, Dodge & Co. to himself, to the secretary of the railroad company, and demanded a transfer on the books to himself. Under the facts shown in this record, there can be no doubt but that Clark, Dodge & Co., under whom Newcomb claims, were innocent purchasers, without notice of any limitations upon the title of Mrs. Smith, or of the fact that Smith himself held the shares as a trustee. As Newcomb obtained their title, it becomes unimportant to inquire as to whether he purchased from them with or without notice of complainant's rights, or whether they in fact bought only as his agents. Is such a purchaser protected against the claim of the defrauded *cestui que trust?* There can at this day be no serious doubt but that an innocent purchaser of shares for value from the apparent owner obtains an indefeasible title, and is unaffected by a secret defect in the seller's title. If the shares had stood in the name of Smith as trustee, this, under the weight of authority, would have put him upon inquiry as to the power of the trustee to sell. But here these shares were not so registered, and there was no notice in fact of a trust. Such a purchaser is protected against the claims of *cestui que trust.* While shares are

universally held to be non-negotiable in the sense of the law merchant, yet, as a species of property *sui generis*, they are something more than mere assignable choses. They have been called, for want of a better term, *quasi* negotiable securities. Mr. Justice Davis, in *Bank* v. *Lanier*, said of this species of property that "stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as possible." 11 Wall., 377.

The observation of Judge Freeman in *Cornick* v. *Richards*, 3 Lea, 1, that the purchaser of shares assigned in blank by the owner "must take subject to previous equities as any other assignee standing in the shoes of his assignor" was unnecessary to the decision; and in the subsequent case of *Cherry* v. *Frost*, 7 Lea, 1, the Court unanimously declared it to have been an inadvertent statement. The undoubted rule in this country is that a purchaser of shares from the apparent owner obtains a good title, notwithstanding such apparent owner may have been in fact a trustee and guilty of a breach of trust in making the sale. Cook on Stocks and Stockholders, Secs. 325 and 434. In *Cherry* v. *Frost*, *supra*, it was held that where a pledgee of stock assigned in blank

by the owner as collateral security, subpledged the certificate for money loaned to him, in ignorance of the owner's equity, the latter was entitled to hold the stock, as against the owner, to the extent of the consideration. In the later case of *Caulkins* v. *Gas Company,* 85 Tenn., 684, a purchaser of shares affected with a trust in the hands of the holder, he being but a life tenant, was protected against the remainder-men, the purchaser having bought for value and in ignorance of the defect in the title of the apparent owner. In *Hadley* v. *Kendrick,* 10 Lea, 525, the purchaser of gas stock from an executor who sold in breach of his trust, the stock having been specifically bequeathed to one for life with remainder over to others, was protected.

The title of the purchaser upon the assignment of the certificate was complete without registration or transfer on the stock books of the corporation. The rule requiring transfer on the books of the company, by the well-settled line of decisions in this State and by the great weight of authority in the Courts of America, is a rule made solely 'for the benefit of the company. By it the company is enabled to know who are entitled to vote and to whom it may pay dividends. A complete equitable and legal title passed by the act of the owner in assigning the certificate, and the subsequent registration of this assignment and issuance of a new certificate in no way affected the rights of the *cestui que trust.* The breach of trust was

complete before the corporation was called upon to transfer the shares, and it had no right to refuse a transfer. *Cornick* v. *Richards*, 3 Lea, 1; *Cherry* v. *Frost*, 7 Lea, 1; *Bank* v. *Farrington*, 13 Lea, 333; *Bank* v. *Planing Mill Co.*, 86 Tenn., 252; *Caulkins* v. *Gas Co.*, 85 Tenn., 683; Lowell on Transfer of Stocks, Secs. 93, 103, 95, 96, 153; Cook on Stocks, Sec. 381.

That Mrs. Smith was a minor at the time of the sale and at date of transfer on the company's books, cannot affect the question of the company's liability for making the transfer. The transfer of shares by a minor is voidable, not void. It is one of those acts which may or may not be to the interest of the minor. To say that every sale of shares by a minor was void would be disastrous to them in most cases. It is like the sale of lands or any other sort of property by a minor. If the act on its face is not such an one as is manifestly injurious to the minor, it will be held voidable merely at the election of the minor. This is the rule in this State concerning sales and conveyances by minors. *Wheaton* v. *East*, 5 Yer., 61; *McGan* v. *Marshall*, 7 Hum., 125; *Barker* v. *Wilson*, 4 Heis., 269. The same rule has been applied to the purchase and sale of stocks by minors. Lumsden's Case, the Law Reports, Chancery Appeal Cases, Vol. IV., 31; Cook on Stocks, Secs. 318 and 427; 10 Am. and Eng. Ency. of Law, Vol. X., 635.

The sale being only voidable at the election of

the minor, the corporation had no right to refuse a transfer, it not having been avoided at date of transfer. Mr. Lowell, on Transfer of Stocks, at Section 138, says: "It is, however, of no consequence that the title of the purchaser is voidable, if it has not in fact been avoided, because by the definition of the term voidable the title of the purchaser in such a case is valid until avoided."

The decree of the Chancellor must be reversed as respects the Nashville & Decatur Railroad Company. Complainants will pay all the costs of the causes.