## DEWING *v.* PERDICARIES.

1. All acts done in aid of the rebellion were illegal and void.
2. Pursuant to a statute of the Confederate States, and to an order of the Con-
   federate District Court for the District of South Carolina, certain shares
   of the stock of a corporation of that State were, upon the ground that the
   owners of them were alien enemies, sequestrated and sold in 1862 at public
   auction; and the company was required to erase from its stock-books the
   names of such owners, insert those of the purchasers, and issue stock cer-
   tificates to them.   All dividends thereafter from time to time declared were
   paid to the purchasers, against whom, or their assignees, and the company,
   this bill was filed by an original stockholder, praying for a decree that the
   certificates so issued be cancelled as null and void, and the defendants en-
   joined from selling them, bringing suits to effect the transfer thereof, or
   collect dividends thereon, and the company from allowing such transfers,
   issuing new certificates for the same, or paying such dividends.   The court
   decreed accordingly.   *Held*, 1. That the order of sequestration, the sale, the
   transfer on the stock-books of the company, and the new certificates, were
   void, giving no right to the purchasers or to their assignees, and taking none
   from the original owners.   2. That the bill was well brought, and the corpo-
   ration a proper party defendant.   3. That the purchasers, or their assignees,
   have no claim against the company for indemnity; but if, under the circum-
   stances, entitled to any redress, they must seek it by suit against the parties
   by whom they claim to have been defrauded.

APPEAL from the Circuit Court of the United States fo the
District of South Carolina.

The facts are stated in the opinion of the court.

*Mr. Philip Phillips* and *Mr. Edward McCrady* for the
appellants.

*Mr. H. E. Young* and *Mr. W. D. Porter*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

There is no controversy about the material facts of this case.
At the beginning of the late civil war, the Charleston Gas-

light Company was a body politic and corporate of the city of Charleston, in the State of South Carolina. Its capital stock consisted of thirty thousand six hundred and sixty-four shares of $25 each. A part of the stock was held by citizens of other states. Pursuant to a statute of the Confederate States, and an order of the Confederate District Court for the District of South Carolina, three thousand seven hundred and seventy-six shares were sequestrated, and sold at public auction on the 11th of April, 1862, for the alleged reason that they belonged to "alien enemies." Of this stock the complainant owned thirteen hundred and fifty-one shares. The defendants, except the gas company, were purchasers at this sale, or are the assignees of such purchasers. The Confederate authorities required the company to erase from its stock-book the names of the loyal owners, to insert those of the purchasers, and to issue stock certificates to the latter; all which was accordingly done. Dividends were declared from time to time, and paid to those parties or their assignees. The company acted under duress. The slightest resistance or hesitation would not have been tolerated by the Confederate authorities.

In February, 1865, the military forces of the United States captured the city of Charleston, and seized all the property and effects of the gas company. The president of the company was relieved from his duties, and ordered to deliver all the records of the company to a lieutenant of the army, who was appointed to succeed him. In May, 1866, the property of the company which had been seized was restored to it. The conditions of the restoration were that the company should erase from its books the names of those who bought the sequestrated stock and of the assignees, and replace the names of the prior stockholders, and also pay to the latter the amount of the dividends declared upon the stock since January, 1861. These requirements were fully complied with by the company.

The bill was filed by Perdicaries for himself and such other stockholders in the same situation as might choose to come in and contribute to the expenses of the litigation. The stock certificates of the original holders, and those of the purchasers or their assignees, are still outstanding.

The complainant prays that the sale may be vacated; that

the certificates still outstanding issued to the purchasers and their assignees may be declared invalid, and ordered to be delivered up and cancelled; that the claimants may be enjoined from transferring or selling the shares, and from bringing suits to effect such transfers, or for dividends; and that the company be enjoined from allowing such transfers, from issuing new certificates, and from paying dividends on the shares to those parties.

Subsequently, an amended bill was filed. It alleged that some of the defendants had commenced actions on the case against the company, alleging that it had issued the certificates fraudulently, and that it was bound to make them good, or to indemnify the holders. It was prayed that all the parties be enjoined from prosecuting or instituting such suits, and that their rights should be finally settled in this suit. There was a decree for the complainants, whereupon the defendants brought the case here.

Nothing is better settled in the jurisprudence of this court than that all acts done in aid of the rebellion were illegal and of no validity. The principle has become axiomatic. It would be a mere waste of time to linger upon the point for the purpose of discussing it. *Texas* v. *White,* 7 Wall. 700; *Hickman* v. *Jones,* 9 id. 197; *Hanauer* v. *Doane,* 12 id. 342; *Knox* v. *Lee,* id. 457; *Hanauer* v. *Woodruff,* 15 id. 439; *Cornet* v. *Williams,* 20 id. 226; *Sprott* v. *United States,* id. 459.

The transactions here in question were clearly within the category thus denounced. The order of sequestration, the sale, the transfer, and the new certificates, were all utterly void. They gave no rights to the purchasers, and took none from the loyal owners. In the view of the law, the rightful relations of both to the property were just the same afterwards that they had been before. The purchasers had not then, and they have not now, a scintilla of title to the stock.

The transferees can be no better off than their vendors. This is necessarily so, for several reasons.

A thing void as to all persons, and for all purposes, can derive no strength from confirmation. 13 Comyns, Dig., tit. Confirmation, D. 1, 4, pp. 144, 145; *Blessing* v. *House's Lessee,* 3 Gill & J. (Md.) 290.

It is a *caput mortuum*, and nothing can give it vitality. The assignor could give no title to his assignee, when he had none himself.

The stock of such corporations may be held by a valid title without a certificate. The certificate is only one of the *indicia* of title. The right to the stock is in the nature of a non-negotiable chose in action. Angell & A. on Corp., sect. 560. The assignee takes it subject to all the equities which existed against it in the hands of the assignor. *Mechanics' Bank* v. *The New York & New Haven Railroad Co.*, 13 N. Y. 599. Such is the rule applied to all choses in action not having the element of negotiability. *National Bank of Washington* v. *Texas*, 20 Wall. 72.

Even where a negotiable note is void *ab initio*, because made so by statute, or by public policy on account of the consideration, or is so by reason of the incapacity of the maker, it can no more be enforced against the maker by a *bona fide* holder than by the payee. It is alike void in the hands of both. 1 Parsons, Bills and Notes (ed. 1873), pp. 276, 277.

It is needless to pursue the subject further. The assignors and assignees occupy exactly the same ground. Neither has any right or title to the stock in question.

The suit was well brought by the complainant. The capital stock and all the other property and effects of a corporation are a trust fund. The corporation owns and holds them as a trustee. The shares are a distinct and separate property. This subject was fully considered in *Farrington* v. *Tennessee*, 95 U. S. 679. What was there said need not be repeated. Where a cause of action affects the entire interests of a corporation as such, the corporation is the proper party to sue. Where it affects specially a stockholder, he has the same right to sue *pro interesse suo* as any one else. In the latter case, it may or may not be necessary to make the corporation a party. As between the complainant and the party who bought his stock at the pretended sale, the conflict was primarily between them. The question was one of *meum* and *tuum*. But the shares represented aliquot parts of the trust fund. It was, therefore, proper that the corporation, as the trustee of that fund, should be brought before the court. that it might have

effectual notice of the litigation, and be bound by the results. The corporation, as the owner and representative of the trust fund, had, however, an interest of its own to be litigated.' So far as the prior and the latter holders of the stock were concerned, it might have made them parties, and had their rights settled by a bill of interpleader. There were also questions affecting all the stockholders alike. They were, (1) whether both sets of claimants could not hold the stock claimed by them respectively, and the aggregate of the capital stock be so much increased; (2) whether the corporation, by reason of the conduct of its officers, was or was not bound to indemnify the purchasers or their assignees, if they lost the stock which they claimed to own; and (3) whether dividends should be paid to both sets of claimants, and, if not, to whom such payments should be made. In such a proceeding the original owners of the confiscated stock must have been made parties. This would have brought the same questions before the court as are now presented for consideration. The liberality and flexibility of the doctrines and practice of courts of equity are such that this could as well be done in this case as in a separate and independent proceeding instituted by the corporation. The complainant had a clear right, on account of the cloud cast upon his title, and of the injury otherwise special to himself, of which he complained, to be heard upon his bills. The entire subject and the necessary parties being before the court, and the court having jurisdiction for one purpose, might well take and exercise it as to every thing involved in the controversy. This saved time, expense, circuity of proceedings, perhaps a multiplicity of suits, and promoted the ends of justice. There is clearly no misjoinder or multifariousness in the bill.

There are cases in which a corporation having refused to do its duty by suing to avert a threatened wrong, a stockholder was permitted to intervene in its stead, making the corporation a party. *Dodge* v. *Woolsey* (18 How. 331) is one of this kind. Cases are more numerous where the directors having made themselves personally liable for neglect or breach of duty, and the corporation refusing to proceed against them, a stockholder has been permitted to sue in its behalf. In such cases, the cor-

poration is an indispensable party. The refusal must be made distinctly to appear; and the avails of the litigation, if there be any, go to the corporation, and are a part of its means, as if it had itself sued and recovered. See *Hodges* v. *New England Screw Co.*, 1 R. I. 312; *Foss* v. *Harbottle*, 2 Hare, 461; *Hersey* v. *Veazie*, 24 Me. 1; *Cunningham* v. *Pell*, 5 Paige (N. Y.), 607; *Smith* v. *Hurd*, 12 Metc. (Mass.) 371; *Austin, Receiver*, v. *Daniels*, 4 Den. (N. Y.) 299. But this bill does not belong to either of these classes. It is founded upon the wrong and injury special to the complainant; but it happens that his case and that of the corporation, if the latter had sued, would depend upon the same considerations, and that the decision of either would decide the other, except, perhaps, as to a single point, in regard to which we entertain no doubt. That point is the claim of a part of the appellants for indemnity from the company. To this, aside from the state of the pleadings, there are fatal objections. If they are paid by the company, they must be paid in part out of the money of the loyal men who have been wronged and forced into this litigation for the vindication of their rights. A court of equity cannot be expected to entertain such a proposition. If those who make the claim are, under the circumstances of this case, entitled to any remedy, it must be sought against the parties personally by whom they say they were defrauded. *The Western Bank of Scotland* v. *Addie*, Law Rep. 1 Scotch App. 145. That question would be alien to those arising and proper to be decided in this case. The litigation as to that subject would be multifarious.

The rights and claims of all the parties before us, as respects both the corporation and the original stockholders, may therefore well be disposed of in this case.

We think the decree of the Circuit Court is right; and it is

*Affirmed.*