## COLUMBIA BREWING CO. v. MILLER, Alien Property Custodian.

(Circuit Court of Appeals, Fifth Circuit. May 9, 1922.)

No. 3820.

**1. Corporations ⊕⇒94—Stock certificates only evidence of ownership, and seizure not essential to subject stockholder's interests.**

It is the general rule that a stock certificate is only evidence of the ownership of the interest in the corporate assets which the shares represent, and that the stockholder's interest may be reached or subjected without obtaining possession of the certificate, and there is nothing in the law of Louisiana in conflict with such rule.

**2. Corporations ⊕⇒110—Not liable for compulsory cancellation and reissue of stock certificates.**

A corporation is not liable to a stockholder for the cancellation of his certificate and the issuance of a new certificate in lieu thereof to another, where such action was in compliance with a legal requirement, or coerced by a power which it is incapable of resisting.

**3. War ⊕⇒12—Stock in state corporation owned by alien enemy is subject to seizure by federal authority, regardless of state law.**

If an interest in a corporation organized and domiciled in a state is owned by a public enemy, that interest is subject to seizure by federal authority, which is not dependent on state legislation, and may be exercised in a manner not authorized by state law.

**4. War ⊕⇒12—Duty of corporation to transfer stock under Trading with the Enemy Act.**

Trading with the Enemy Act, § 7(c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d[c]), requiring corporations under prescribed conditions to cancel outstanding certificates of stock and in lieu thereof issue certificates to the Alien Property Custodian, imposes an absolute duty, not dependent on the production and surrender of the outstanding certificates; but such transfer does not deprive any nonenemy claimant of vested rights, which may be established by proceeding under section 9 of the act, as amended.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by Thomas W. Miller, Alien Property Custodian, against the Columbia Brewing Company. Decree for complainant, and defendant appeals. Affirmed.

Charles Carroll and Joseph W. Carroll, both of New Orleans, La., for appellant.

Louis H. Burns, U. S. Atty., of New Orleans, La., and Dean Hill Stanley, Sp. Asst. Atty. Gen., of Washington, D. C., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This is an appeal by the Columbia Brewing Company, a Louisiana business corporation, from a decree requiring that company to transfer, assign, and deliver to the appellee, as Alien Property Custodian, 800 shares of its common stock standing upon its books in the name of Gustav Paul, of Berlin, Germany, to cancel upon its books and records said shares of stock, and in lieu thereof to issue to appellant, as Alien Property Custodian, new certificates

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

therefor. That decree was rendered on November 22, 1921, in a suit or proceeding instituted by the appellee against the appellant on August 18, 1921. That the shares of stock in question were enemy owned was indicated by a report made by the appellant to the Alien Property Custodian on April 3, 1918. Prior to the institution of the suit, and on or about March 17, 1919, the appellee's predecessor in office, as Alien Property Custodian, acting under and pursuant to the authority vested in him by the Trading with the Enemy Act, the amendments thereto (40 Stat. 411, 1020 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½ff, 3115½g–3115½j]), and the proclamations and executive orders issued thereunder, after investigation determined that said Gustav Paul was an enemy within the meaning of said act, seized said 800 shares of stock, gave written notice to the appellant of such seizure, and that the appellant was required to cancel forthwith on its books and records all of said shares of stock, and in lieu thereof to issue new certificates therefor in the name of the Alien Property Custodian.

[1] The correctness of the decree is questioned on the ground that under the law of Louisiana the interest of Gustav Paul in the appellant corporation is incapable of being seized, without a seizure of the certificates issued to Paul and representing his interest in the corporation. It is contended that under that law the interest of a stockholder is so identified with the certificate issued to him that that interest cannot be reached or seized without getting possession of the certificate. We have not been advised of any authentic statement of Louisiana law which indicates that under that law the fact that a certificate for stock in a Louisiana corporation is not in that state is as effectual in putting the stockholder's interest in the corporation beyond the reach of Louisiana process as if the domicile and property of the corporation also were in another jurisdiction. The general rule is that stock certificates are only evidence of the ownership of the shares or interest in the corporate assets which they represent, and that the stockholder's interest may be reached or subjected without getting possession of the certificate or certificates issued to him. Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647. Louisiana decisions indicate that the just mentioned rule as to the nature of stock certificates prevails in that state. In the case of Parker, Tax Collector, v. Sun Insurance Co., 42 La. Ann. 1172, 8 South. 618, it was decided that the interest of a stockholder in a corporation could be seized, either by taking possession of the certificate representing that interest or by seizing the interest of the stockholder in the assets or property of the corporation by giving notice to the proper officer thereof. The opinion in the case of Succession of Sinnot v. Hibernia National Bank, 105 La. 705, 30 South. 233, expresses views as to the nature of stock certificates in harmony with those stated in the opinion in the case of Jellenik v. Huron Copper Mining Co., supra.

It is not necessary to determine whether any change of the law in the respect in question was effected by the Louisiana Stock Transfer Act of 1910 (Acts La. 1910, Act No. 180), as under section 23 of that act its provisions apply only to stock certificates issued after the taking

effect of that act, and the certificates in question in this case were issued to Gustav Paul in 1904. The act passed in 1904 (Acts La. 1904, p. 370), making the delivery of a stock certificate with a written transfer to a bona fide holder or pledgee a sufficient delivery to transfer title, does not purport to make a seizure of a stockholder's interest in a corporation dependent upon possession of the certificate issued to him being acquired. There is no inconsistency between a stockholder's interest in a corporation being seizable without possession of the certificate issued to him being obtained and the existence of a liability of the corporation to a stockholder by reason of an unauthorized cancellation of the certificate issued to him, and the issuance in lieu thereof to a third party of a new certificate representing the same interest.

[2, 3] A corporation is not subject to the just mentioned liability, if its action in canceling outstanding certificates and issuing new ones in lieu thereof is in compliance with a lawful requirement, or is coerced by a power which it is incapable of resisting successfully. Dewing v. Perdicaries, 96 U. S. 193, 24 L. Ed. 654; Gamble v. Dawson, 67 Wash. 72, 120 Pac. 1060, Ann. Cas. 1913D, 501. Louisiana decisions, recognizing and enforcing the liability incurred by Louisiana corporations by wrongfully cancelling stock certificates and issuing other certificates in lieu thereof, by no means indicate that, by reason of a stock certificate issued by such a corporation being beyond the reach of the governmental power exercisable in Louisiana, the interest in the corporation of the stockholder to whom that certificate was issued is kept from being subject to the exercise of that governmental power. If such an interest in a corporation having its domicile and property in Louisiana is owned by a public enemy of the United States, that interest is subject to seizure by federal authority, which is not dependent upon state legislation for power to lay hold of enemy property, and may be exercised in a manner not authorized by state law. Miller v. United States, 11 Wall. 268, 297, 20 L. Ed. 135.

[4] Nothing in the provision of subsection (c) of amended section 7 of the Trading with the Enemy Act (40 Stat. 1020 [Comp. St. Ann. Supp. 1919, § 3115½d, subd. c]) which, under prescribed conditions, requires a corporation to cancel outstanding stock certificates and in lieu thereof to issue certificates to the Alien Property Custodian or otherwise, as the Alien Property Custodian shall require, indicates the existence of an intention to make the duty of complying with the requirement dependent upon the outstanding certificate being produced and surrendered. The opinion in the case of Garvan v. Marconi Wireless Telegraph Co. (D. C.) 275 Fed. 486, contains what is believed to be a correct statement as to the situation dealt with by that provision. Its language, considered in the light of the circumstances of its enactment, indicates the absence of an intention to make the production of the old certificate a prerequisite to the requirement becoming effective. Claims by any person not an enemy or ally of an enemy to the whole or a part of the interest represented by the stock certificate issued to the Alien Property Custodian may be asserted in either of the modes provided for by amended section 9 of the act (41 Stat. 35). The provisions mentioned show that it was contemplated that property standing

in the name of a person or persons determined by the President or his authorized representative, after investigation, to be an enemy or ally of enemy, should be immediately seized for the security of the government, and that mistakes made by such action should be corrected in the manner prescribed. Central Trust Co. v. Garvan, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. 403. A provision of subsection (c) of amended section 7 of the act (Comp. St. Ann. Supp. 1919, § 3115½d, subd. c), makes the sole relief and remedy of any person having any claim to stock represented by a certificate issued as required to the Alien Property Custodian that provided by the terms of the act, and forbids the corporation issuing such certificate being held to liability because of its doing so.

Statutes making the validity, as against third parties, of transfers of stock certificates to bona fide holders or pledgees dependent upon the entry thereof on the books or records of the corporation, are not uncommon. There is some analogy between such provisions and those of amended section 9 of the Trading with the Enemy Act as to a person not an enemy or ally of enemy disclosing and asserting a claim to an interest, right, or title in property conveyed, transferred, assigned, or delivered to the Alien Property Custodian. No vested right is impaired by a change of the law having the effect of making the benefit of such a claim subject to be lost if it is not disclosed and asserted; reasonable time and opportunity to do so being afforded. The statute does not purport to give to the cancellation of the stock certificates issued to Paul and the issue in lieu thereof of new certificates to the Alien Property Custodian the effect of depriving any person not an enemy or ally of enemy of any right or interest such person may have acquired in the property represented by those certificates before that property was made subject to seizure by the government. On the contrary, explicit provisions of the act keep the cancellation of the old certificates and the issuance in lieu thereof of new ones from standing in the way of the recognition and enforcement of valid claims of nonenemy persons to the whole or a part of the stock interest so evidenced. Confiscation of nonenemy property is not contemplated, though the disclosed title to it stands in the name of an enemy.

Nothing in the record in this case indicates that any one not an enemy or ally of enemy has or claims any interest in the property, the ownership of which was evidenced by the certificates issued to Paul. To hold that the mere possibility of the existence of such an interest, especially when it has not been disclosed after the lapse of a reasonable time allowed for disclosing it, stands in the way of the government seizing and controlling the disposition of property determined, after investigation, to be enemy owned, would not be consistent with due effect being accorded to the governmental power over enemy property. There is a possibility of one not an enemy having or claiming an interest in or right to any property the title to which stands in the name of an enemy. For practical purposes the power of seizing and controlling property apparently enemy owned would be paralyzed, if it could be exercised only after the making of a conclusive finding, based on a proper investigation, that the reality corresponds with the appearance.

The right of the government to seize and control property found, after investigation, to be enemy owned, is not lost as a result of that finding turning out to be incorrect in whole or in part, whatever rights in such property nonenemy persons may have not being foreclosed by such seizure and control.

In our opinion the record does not show that the appellant has any tenable ground of complaint against the action of the court in requiring the cancellation of the stock certificates issued to Paul, and the issue, in lieu thereof, to the appellee of new certificates representing the same property interest. The decree appealed from is modified by adding thereto the following provision:

"The defendant has leave to state on each of the new stock certificates required to be issued that it is issued in compliance with the decree in this case."

As so modified, that decree is affirmed.

Modified and affirmed.