## THE PURE OIL CO. *v.* HUNT, RECR.

(Decided June 26, 1933.)

*Messrs. Maxwell & Ramsey,* for plaintiff in error.
*Mr. E. P. Moulinier* and *Messrs. Taft, Stettinius & Hollister,* for defendant in error.

Ross, J. This is a proceeding in error from the court of common pleas of Hamilton county, wherein judgment was rendered in favor of the plaintiff, Graham P. Hunt, receiver, upon a general verdict.

The action was brought by the receiver of Roberts & Hall, stockbrokers, against the Pure Oil Company, to recover the value of 300 shares of stock in the oil company, which it was alleged had been converted by the corporation on February 27, 1929, when it canceled the certificate of such stock and issued new certificates in lieu thereof to a person or corporation other than Roberts & Hall. No refusal of a demand to transfer the stock to the receiver was alleged.

The Pure Oil Company admitted that it had "issued and delivered to some other person or corporation other than Roberts & Hall new certificates of stock of defendant corporation to take the place of the certificates described in the petition."

The answer denied that on the date of this alleged conversion, February 27, 1929, Roberts & Hall were, or now are, the holders and owners of such stock, and denied that the certificates were indorsed and delivered to Roberts & Hall in the usual course of business.

The facts essential to a determination of the points of error presented are as follows:

Roberts & Hall for some time previous to the appointment of a receiver were engaged in the buying and selling of stocks. Dean, Onativia & Co. was their correspondent in New York. On April 6, 1925, this company was replaced as correspondent by Pynchon & Co. The first correspondent transferred to the second correspondent all stocks owing to Roberts & Hall, and all checks in settlement of the balances due. In this settlement was included delivery of two of the

certificates of stock now in dispute, each for one hundred shares. Pynchon & Co. then placed these certificates in the American Exchange National Bank as collateral for a loan to Roberts & Hall. The certificate for the other one hundred shares had been on June 29, 1923, substituted as collateral by Dean, Onativia & Co. with the American Exchange National Bank in New York, covering a Roberts & Hall loan. All three certificates were indorsed in blank by Dean, Onativia & Co., and remained with the American Exchange National Bank, or its successor, the Irving Trust Company, until the loan of Roberts & Hall was paid by the receiver, when the certificates were turned over to the receiver, January 22, 1930, who, the evidence shows, made demand therefor, although this is denied by the plaintiff in error.

In 1927, Dean, Onativia & Co. went into bankruptcy, their assets were acquired under order of the United States District Court by the Rosenbaum Grain Corporation, one or more of the stockholders of which corporation had been partners of Dean, Onativia & Co.

On February 27, 1929, the Rosenbaum Grain Corporation presented to the Pure Oil Company, plaintiff in error, affidavits alleging that the certificates for the stock in question had been lost, stolen, or destroyed, and tendered a bond, and on that date new certificates were issued to the Rosenbaum Grain Corporation. While the plaintiff in error still had ample treasury stock, and no question of overissue is involved, the pleadings admit that the issue to the Rosenbaum Grain Corporation was the identical stock in question.

Dividends on the stock had been continuously paid to Dean, Onativia & Co. and the liquidating trustee, Joseph Rosenbaum, and later to the Rosenbaum Grain Corporation.

There is a great mass of evidence introduced to show that the status of accounts between Dean, Onativia & Co. and Roberts & Hall resulted in the balanc-

ing of these accounts at the time of the settlement, and that the 300 shares of Pure Oil Company stock were fully accounted for in the settlement. There is also evidence that through a mistake the Pure Oil Company stock was transferred by the settlement instead of Pacific Oil stock, and much is made of a correction upon the statement changing one to the other.

The evidence is clear, however, that by indorsement Dean, Onativia & Co. intended to transfer title to the shares involved in this litigation and placed as collateral to the credit of Roberts & Hall with the American Exchange National Bank. There is no evidence that Roberts & Hall were ever divested of this title admittedly intended to be transferred to them by the blank indorsement and delivery of the certificates by Dean, Onativia & Co.

The court refused to give the following special charge, which is advanced as one assignment of error: "I charge you that if you find that on February 27, 1929, the date on which the petition alleges the conversion of the certificates for 300 shares of the stock of The Pure Oil Company occurred, Roberts & Hall owed Dean, Onativia & Company 300 shares of Pure Oil stock, or the value thereof, then and in that event it is immaterial whether the specific certificates enumerated in the petition were the property of, or belonged to, Roberts & Hall, and your verdict must be for defendant."

As title to the 300 shares represented by the certificates had passed to Roberts & Hall, the fact that Roberts & Hall might have been obligated to deliver to Dean, Onativia & Co. other shares of Pure Oil stock is entirely immaterial.

General Code, Section 8673-1, provides as follows:

"Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appear-

ing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby signed by the person appearing by the certificate to be the owners of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

So far as the evidence submitted as to the status of the account between Dean, Onativia & Co. and Roberts & Hall went to show that Roberts & Hall did not have title to the stock, it was competent; but, when it becomes apparent that the title had passed, it is difficult to see how it could be effective to prove that such title was divested, in view of the statute just quoted.

If transfer of title can only be effected by delivery of the certificate, then the corporation, in order to cause a conversion of the stock, must in some way directly repudiate the title of the owner by refusing to give the certificate the force given it by the statute. Until it does so, while it may commit acts which may give the owner a right to cause rescission, there can be no conversion.

No more plain or simple language could be used than that employed to effect the meaning secured, and cause a change of the former rule under the common law as to transfer of title of shares of stock.

Section 8673-6, General Code, provides that the in-

dorsement is effective to transfer title even though the transfer was induced by fraud, duress, or mistake, or the indorser has revoked the delivery, or authority given by the indorsement, or the transferor has died, or received no consideration.

Section 8673-7, General Code, provides the method of reclaiming the certificate by an appropriate proceeding.

Section 8673-17, General Code, provides for a proceeding to cause the issuance of a new certificate when the original is lost or mislaid; and Section 8623-30a, not in force at the time of the issuance of the new certificates to Rosenbaum Grain Corporation, now protects the corporation when new certificates are issued to one whom it honestly believes is the *bona fide* owner of a certificate lost, stolen, or destroyed. The corporation may recognize such holder of a reissued certificate until enjoined by the lawful owner of the certificate.

The court charged as follows in the general charge: "If you should find that Roberts & Hall owned said stock in the possession of said bank subject only to the right of said bank to hold the same as security for said indebtedness, and that said indebtedness has been paid, then the Court charges you as a matter of law that such title so proven is sufficient to enable the plaintiff to maintain this action, and the plaintiff is entitled to a verdict should you also find that the defendant was guilty of a conversion of said stock as alleged by the plaintiff. The fact, if it is a fact, that this stock was purchased or held by Roberts & Hall to fulfill an obligation on their part to one or more of their customers to purchase for them Pure Oil stock is immaterial and should not be considered by you."

Now the "conversion" of said stock, as alleged by the plaintiff, was merely the transfer of the stock upon the books of the company—the cancellation of the certificates *on the books of the company* and the issue of

new certificates to some other person or corporation than Roberts & Hall, and all of this is alleged to have occurred definitely on February 27, 1929.

If these acts in themselves amount to a conversion, then the court was correct. If they do not amount to a conversion, then the charge was erroneous; and it must be borne in mind in this connection that the Pure Oil Company admitted in its answer that it had "issued and delivered to some other person or corporation other than Roberts & Hall new certificates of stock of defendant corporation *to take the place of the certificates described in the petition.*"

We find many statements both by text-writers and courts which may be construed as holding that a mere transfer upon the books of the corporation amounts to a conversion. These we consider to have been based upon the law preceding the passage of the Uniform Stock Transfer Act, whereby the common-law title only passed upon a transfer upon the books of the corporation. Under the statute previously noted, which has been the law of this state since 1911 (102 Ohio Laws, 503), the transfer of title is effected by the delivery of the certificate, notwithstanding anything in the certificate, or the charter, or the laws of the corporation, to the contrary.

For example, in *Cleveland & M. Rd. Co.* v. *Robbins, Admr.,* 35 Ohio St., 483, 484, it is stated in the fourth paragraph of the syllabus: "Until the transfer of the stock to the holders of the original certificate was refused, or they had notice of the transfer of the stock to other parties, the statute of limitations did not begin to run."

This would imply that a mere transfer on the books would be in itself, after notice thereof, sufficient to constitute a conversion.

In the case of *Cincinnati Finance Co.* v. *Booth,* 111 Ohio St., 361, at page 368, 145 N. E., 543, the court says:

"A further question was presented in argument and is discussed in the briefs of counsel, to-wit, whether the so-called Uniform Stock Transfer Act, Section 8673-1, General Code, has taken away the right to bring an action for conversion by one who is a *bona fide* holder and owner of stock when the corporation refuses to transfer the same upon its books without lawful excuse.

"This question has not been unconsidered, nor should the inference be drawn that the judgment below would be disturbed thereby, but a majority of the court are of opinion that the judgment of affirmance should be rested upon the grounds above indicated."

It is to us obvious, however, that a refusal to transfer would be a direct attack upon the rights conferred by the delivery of the certificates, wholly different from the action of the corporation in transferring stock upon its books, an action which could occur through mistake, and be immediately rectified without injury to anyone.

It must be borne in mind that this is not an action for such wrongful refusal to acknowledge the rightful owner, but is an action based wholly upon the act of the corporation in making a transfer upon its books.

It is our conclusion also that the rule as to chattels, possibly applicable previously to stock, contained in the first paragraph of the syllabus in *Baltimore & Ohio Rd. Co.* v. *O'Donnell,* 49 Ohio St., 489, 32 N. E., 476, 21 L. R. A., 117, 34 Am. St. Rep., 579, does not apply. Section 8673-7, General Code, contains the appropriate remedy for setting aside an erroneous or wrongful transfer of title by delivery of the certificate.

It is our conclusion, therefore, that the general charge of the court was erroneous in permitting the jury to find a conversion to have occurred, simply based upon the acts of the corporation in canceling the certificates upon the books (it could not cancel the

certificates since it did not possess them) and issuing new certificates.

Under the Uniform Stock Transfer Act it is necessary to allege and prove a direct, definite refusal by the corporation to acknowledge the rights conferred upon the owner of stock by his possession of the certificate therefor.

While there is evidence of a demand and refusal in the instant case, the pleadings and charge were based upon the acts of the corporation mentioned, occurring on February 27, 1929, and had no reference to such refusal or demand.

It is to be regretted that the pleadings were not constructed so as to present the real acts of conversion, which from the evidence would seem to have occurred; but to approve the law as presented to the jury in the instant case would be, in view of the present Transfer Act, to approve an incorrect rule of law, in that the mere act of the corporation in effecting a transfer upon its books would be held to be in itself a conversion, without any regard to its possible attitude toward the certificate in the hands of the lawful owner.

For these reasons the judgment of the court of common pleas is reversed, and the cause is remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

HAMILTON, P. J., and CUSHING, J., concur.