AMERICAN STEEL FOUNDRIES v. HUNT.
No. 7002.

Circuit Court of Appeals, Sixth Circuit.
Oct. 17, 1935.

Joseph H. Head and Joseph S. Graydon, both of Cincinnati, Ohio (Gregor B. Moormann and Maxwell & Ramsey, all of Cincinnati, Ohio, on the brief), for appellant.

Edward P. Moulinier and Charles P. Taft, II, both of Cincinnati, Ohio, for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Action by Graham P. Hunt, receiver for Roberts & Hall, stockbrokers in Cincinnati, to recover from appellant, American Steel Foundries, the sum of $6109.37, with interest, as damages for the conversion of stock certificate No. N/Y 15699 and the shares represented thereby, issued by American Steel Foundries on January 2, 1924, in the name of Dean, Onativia & Co. (a partnership hereinafter called Dean) and indorsed by it in blank and delivered to Roberts & Hall.

The jury found that Roberts & Hall, a partnership, was the owner and holder of the certificate on January 6, 1930, the date of the alleged conversion, and this finding is not challenged.

The jury found against appellant upon the issue of conversion, and awarded appellee the value of the stock.

Appellant complains of the following instruction: "By 'Conversion' is meant an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another in any way that alters their condition, or to the exclusion of the owner's right. The legal wrong denominated 'Conversion,' is an unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. Such an exercise of authority over personal property of another in exclusion of, or in defiance of, or inconsistent with the owner's right therein, such exercise or dominion or authority over the shares of stock of a stockholder in a corporation by the corporation, is a conversion of the stock by the corporation and renders it liable to the owner for the value of the stock at the time of the conversion; and the wrongful cancelling of the owner's certificate of his stock and the wrongful issuing of another certificate in the name of another person without the owner's knowledge or consent, is a conversion of the stock of the owner."

It also assigned error upon certain other instructions after the close of the general charge, but these were merely explanatory of the excerpt above quoted.

From 1923 to 1929, Roberts & Hall operated in New York through correspondents. During 1924 and part of 1923 and 1925, they were represented there by Dean. Roberts & Hall carried loans with New York banks which they secured with collateral. It was their practice from time to time to make substitutions for the collateral. These substitutions were arranged by Mr. Roberts, one of the partners, who would notify Dean to procure certain stocks from the bank and deliver others in place thereof. Dean would carry out these instructions. From 1923 to 1929 Roberts & Hall carried a loan with the American Exchange Bank of New York and its successor, the Irving Trust Company. On January 2, 1924, appellant issued certificate No. N/Y 15699 for 100 shares of its stock to Dean, who, two days later, indorsed it in blank and substituted it as collateral upon the loan of Roberts & Hall at the American Exchange Bank receiving other stock in return. Dean notified Roberts & Hall of this transaction and entered it in the "sold" column on the sheet of its ledger captioned "Roberts & Hall in account with D. O. & Co." This meant that certificate No. N/Y 15699 and the shares it represented had passed entirely from the control and ownership of Dean. The loan with the American Exchange Bank and its successor continued until December 30, 1929, when it was discharged by appellee, who just prior thereto had been appointed receiver for Roberts & Hall, and certificate No. N/Y 15699 was returned to him on January 22, 1930.

In April, 1925, appellant increased its capital stock and changed its par value by giving all stockholders five shares for every

four held by them. This made certificate No. N/Y 15699 for 100 shares exchangeable for 125 shares.

In December, 1927, Dean suffered bankruptcy and procured a composition, and Joseph Rosenbaum, one of the partners, became liquidating agent. He filed an affidavit with appellant in which he claimed that certificate No. N/Y 15699 was lost or mislaid, and tendered an indemnity bond. Appellant accepted the bond and through its transfer agent in New York issued two new certificates in the name of Dean for 100 and 25 shares, respectively, in place of certificate No. N/Y 15699. The new certificates were transferred first to Rosenbaum Grain Corporation and in turn to another. Appellant did not cancel the original certificate No. N/Y 15699, since it did not have possession, but it did enter a notation of cancellation upon its books and placed a stop transfer order thereon.

■ In the absence of statute there could be no criticism of the general definition of "conversion" found in the charge, but in light of the facts and of the provisions of the Uniform Stock Transfer Act we think the instruction complained of was erroneous. Appellant might have required Rosenbaum, as liquidating agent, to set up claim for the replacement certificates before "a court of competent jurisdiction" as provided by section 17 of the Act then in force in New York (Personal Property Law N. Y. [Consol. Laws, c. 41], § 178) New Jersey (Comp. St. Supp. N. J. 1924 § 47—166), and Ohio (Gen. Code Ohio § 8673-17). If that course had been pursued, Roberts & Hall would probably have been notified as required by section 17, supra, because Dean knew that Roberts & Hall was its transferee. But appellant passed over the statute and voluntarily issued the new certificates. It is manifest that this course did not in law deprive "Roberts & Hall of their beneficial interest in the certificate owned by it and the shares it represented" (see In re Coats, 75 App. Div. 469, 78 N. Y. S. 425, 428); the basis of appellee's cause of action. To say

that it did ignores due process. Geyser-Marion Gold-Min. Co. v. Stark, 106 F. 558, 560 (C. C. A. 8).

■ The ownership of Roberts & Hall was made secure by section 1 (a) of the act.[1] The last clause of section 1 (b)[2] completely nullified the attempted cancellation of the old certificate upon the books, and the issuance of the new certificates in so far as those acts affected the status of Roberts & Hall. It remained a stockholder and was entitled to recognition as such. Appellee is in possession of certificate No. N/Y 15699, the evidence of his ownership, and as to him the new certificates are void. Christy on the Transfer of Stock, § 278; Western Union Telegraph Co. v. Davenport, 97 U. S. 369, 371, 24 L. Ed. 1047; Dewing v. Perdicaries, 96 U. S. 193, 195, 24 L. Ed. 654; St. Romes v. Levee Steam Cotton Press Co., 127 U. S. 614, 620, 8 S. Ct. 1335, 32 L. Ed. 289; Smith v. Railroad, 91 Tenn. 221, 232, 18 S. W. 546. To permit appellee to recover the full value of certificate No. N/Y 15699 in an action for conversion would imply that its ownership had passed to the holders of the new certificates (Pardee v. Nelson et ux., 59 Utah, 497, 503 205 P. 332, 21 A. L. R. 385; Lawyers Mortg. Inv. Corporation v. Paramount Laundries, Inc., 287 Mass. 357, 191 N. E. 398, 400) by virtue of a void transaction.

Such a result would overturn the familiar meaning of the term "conversion." Conversion implies more than a futile assertion. That which is not conversion in law is not so in fact. To say, therefore, as applicable here that "the wrongful cancelling of the owner's certificate of his stock" (the certificate itself was never canceled) "and the wrongful issuing of another certificate in the name of another person without the owner's knowledge or consent is a conversion of the stock of the owner" and that such conversion "renders it liable to the owner for the value of the stock at the time of the conversion * * *" was erroneous and prejudicial, and so was the explanation given to the jury at the close of

---

[1] "Section 1. How title to certificates and shares may be transferred.—Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby. * * *"

[2] "The provisions of this section shall

be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent."

the general charge. These instructions would permit that which section 1 (b), clause 2 of the act substantially forbids.

There are of course many circumstances under which trover will lie for the conversion of corporate shares such as (1) where a transfer upon the books passes title by virtue of the by-laws or regulations of the company or of some particular statute (Cornick v. Richards, 3 Lea [Tenn.] 1; Leurey v. Bank of Baton Rouge, 131 La. 30, 38, 58 So. 1022, Ann. Cas. 1913E, 1168); (2) where the transfer was brought about by the negligence of corporate agents; and (3) where the corporation by some overt or positive act and in violation of its trusteeship repudiated the shareholder's ownership and acted in hostility thereto. The third class is illustrated by Cleveland & M. R. Co. v. Robbins, Adm'r, 35 Ohio St. 483, where after the issuance of the replacement certificates there was a demand by the rightful owner of the shares for the restoration of his rights followed by a specific denial. See, also, First Nat. Bank v. Lanier, 11 Wall. 369, 20 L. Ed. 172; MacDonnell v. Buffalo Loan, Trust & Safe Dep. Co., 193 N. Y. 92, 85 N. E. 801, Here there was neither allegation nor evidence of demand and refusal, nor evidence of any positive repudiation of appellee's ownership. See Pure Oil Co. v. Hunt, 46 Ohio App. 329, 188 N. E. 738.

Appellee's evidence presents no more than an ineffective transfer unaccompanied by any affirmative act in furtherance of it, such as a denial of the right of Roberts & Hall to receive dividends, to vote its stock, or to participate in the distribution of the corporate property upon dissolution. We think this falls short of conversion. MacDonnell v. Buffalo Loan, Trust & Safe Dep. Co., supra; Cooley on Torts, vol. 1, § 45; Bigelow on Torts, § 528.

It does not necessarily follow that appellee is without remedy. He might reasonably consider whether he has an action upon the facts of the case for an unlawful interference with the exercise by the partnership of its rights as a stockholder, and if he should be successful the measure of damages would be compensation for the injury rather than the value of the stock.

Appellant assigned error upon the denial of its request as follows: "That the act of the defendant in issuing in the name of Dean, Onativia & Company, certificates for 125 shares of its no par common stock in lieu of Certificate No. N/Y 15699 for 100 shares of its common stock, with a par value of thirty-three and one-third dollars per share, registered on the Company's books in the name of Dean, Onativia & Company, and placing on their books a stop transfer in respect thereto, if acting in good faith and without knowledge of any claim of Roberts & Hall or the Receiver, would not constitute a conversion by defendant of the shares represented by said Certificate No. N/Y 15699, owned by Roberts & Hall."

We think this request should have been given.

The judgment is reversed, and the case remanded for a new trial.